# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Steven M. Larimore**
Court Administrator • Clerk of Court

701 Clematis Street, Room 402
West Palm Beach, Florida 33401
(561) 803-3400

## TRANSMITTAL LETTER

**TO:**  CLERK, UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
Richard C. Lee U.S. Courthouse
141 Church Street
New Haven, CT 06510

**RE:**       USA v. ROBERT RIVERNIDER
Your Case No.: 3:10CR222 (EBB)
Our Case No.: 10-8344-LRJ

**DATE: November 29, 2010**

=============================================================

The above-mentioned cause has been transferred to your jurisdiction pursuant to Rule 40

Please find enclosed the following documents:

_____          Original file

___XX___           Certified File

_____          Magistrate Proceedings -Original Pleadings

_____          CASH Bond  Amount $_____
(Note:  Cash is not included in this transmittal and will
be forwarded at a later date from the Financial Section)

Kindly acknowledge receipt of these documents by RECEIVE STAMPING the enclosed copy of this letter and sending it to:

**UNITED STATES DISTRICT COURT**
**CLERK OF COURT**
**701 CLEMATIS STREET**
**WEST PALM BEACH, FLORIDA 33401**

Yours sincerely

By_____
Kenneth J. Zuniga, Deputy Clerk

---

*The Mission of the Clerk's Office for the Southern District of Florida is to be the mechanism*
*for the judges, the bar, litigants, and the public, to resolve disputes in a just and efficient manner.*

CLOSED

## U.S. District Court
### Southern District of Florida (West Palm Beach)
### CRIMINAL DOCKET FOR CASE #: 9:10-mj-08344-LRJ All Defendants
### Internal Use Only

Case title: USA v. Rivernider

Date Filed: 11/05/2010
Date Terminated: 11/12/2010

Assigned to: Magistrate Judge Linnea R. Johnson

**Defendant (1)**

**Robert Rivernider**
96006-004
*YOB: 1965*
*TERMINATED: 11/12/2010*

represented by **Noticing FPD-WPB**
Email: wpb_ecf@fd.org
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender Appointment*

**Pending Counts**

None

**Disposition**

**Highest Offense Level (Opening)**

None

**Terminated Counts**

None

**Disposition**

Certified to be a true and correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida
By _____
Deputy Clerk
Date 11/29/2010

**Highest Offense Level (Terminated)**

None

**Complaints**

18:1349.F

**Disposition**

**Plaintiff**

**USA**

represented by **Nancy Vorpe Quinlan**
United States Attorney's Office
500 South Australian Avenue
Suite 400
West Palm Beach, FL 33401

561-820-8711
Fax: 820-8777
Email: nancy.quinlan@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/05/2010 | 1 | Magistrate Removal of Indictment from the District of Connecticut Case number in the other District 3:10CR222(EBB) as to Robert Rivernider (1). (tmn) (Entered: 11/08/2010) |
| 11/05/2010 | 2 | Minute Entry for proceedings held before Magistrate Judge Linnea R. Johnson: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Robert Rivernider held on 11/5/2010 Appearance entered by Noticing FPD-WPB for Robert Rivernider on behalf of defendant. Appointment of Attorney Noticing FPD-WPB for Robert Rivernider (Digital 10:05:28/10:13:38) (Tape #LRJ-10-41-2507/2914) (tmn) (Entered: 11/08/2010) |
| 11/05/2010 | 3 | Order on Initial Appearance as to Robert Rivernider for proceeding held on 11/5/2010. Tape #LRJ-10-41-2507/2914 (Digital 10:05:28/10:13:38) Detention Hearing set for 11/12/2010 10:00 AM in West Palm Beach Division before Magistrate Judge Ann E. Vitunac. Removal Hearing set for 11/12/2010 10:00 AM in West Palm Beach Division before Magistrate Judge Ann E. Vitunac. Signed by Magistrate Judge Linnea R. Johnson on 11/5/2010. (tmn) (Entered: 11/08/2010) |
| 11/05/2010 | | Arrest Rule 5(c)(3)/Rule 40 of Robert Rivernider (kza) (Entered: 11/09/2010) |
| 11/09/2010 | 4 | Report Commencing Criminal Action as to Robert Rivernider - YOB: **/**/1965 Prisoner #: 96006-004 (kza) (Entered: 11/09/2010) |
| 11/12/2010 | 5 | Minute Entry for proceedings held before Magistrate Judge Ann E. Vitunac: Status Re: Detention and Removal Hearing as to Robert Rivernider held on 11/12/2010. Defendant waives the Rule 40 Hearing and requests a detention hearing in the District of Connecticut. Warrant of Removal signed. (Digital 11:14:08.) (Tape #AEV-10-65-(2470-2575).) (kza) (Entered: 11/29/2010) |
| 11/12/2010 | 6 | WAIVER of Rule 40 Hearings by Robert Rivernider (kza) (Entered: 11/29/2010) |
| 11/12/2010 | 7 | WARRANT OF REMOVAL ISSUED to District of Connecticut (New Haven) as to Robert Rivernider. Signed by Magistrate Judge Ann E. Vitunac on 11/12/2010. (kza) (Entered: 11/29/2010) |
| 11/29/2010 | 8 | Transmittal Letter as to Robert Rivernider sent to Clerk, USDC - Connecticut (New Haven) with Certified copy of file and docket sheet (kza) (Entered: 11/29/2010) |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-8344-LRJ

UNITED STATES OF AMERICA,
                    Plaintiff,

v.

ROBERT RIVERNIDER
                    Defendant.



FILED by _____ D.C.

NOV 1 2 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

_____/

## WARRANT OF REMOVAL

A(n) _____ Complaint

     X Indictment

_____ Information

_____ Probation Violation Warrant

_____ Supervised Release Violation Warrant

_____ Bench Warrant

(NEW HAVEN)

having been filed in the _____ District of CONNECTICUT, charging

the above named defendant with 18: 1349, 1343, 2 , and the defendant having
26: 7201

_____ surrendered

X been arrested

in the Southern District of Florida, having had an initial appearance before the Court and

having:

X waived further hearing

_____ been given a hearing in accordance

with **Fed.R.Crim.P.** 40.

having not posted the bail as set by the Court, the defendant is hereby committed to the custody of the United States Marshal for removal to the District where the charge is pending and delivery to the United States Marshal for that District or his lawfully authorized representative.

**DONE AND ORDERED** at West Palm Beach, Florida this 12TH day of NOVEMBER, 2010.

ANN E. VITUNAC
**UNITED STATES MAGISTRATE JUDGE**

c: AUSA
   Defense
   Pretrial Services
   US Probation
   U.S. Marshal (2 certified copies)

Certified to be a true and correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida
By _____
Deputy Clerk
Date 11/29/2010

# United States District Court

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10 - 8344 - LRJ

UNITED STATES OF AMERICA,

VS.

ROBERT RIVERNIDER,

FILED by _____ D.C.

NOV 1 2 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## WAIVER OF RULE 40 HEARINGS

I, ROBERT RIVERNIDER, understand that in the _____ District of CONNECTICUT _____, charges are pending alleging violation of 18: 1349, 1343, 2 26: 7201 _____ and that I have been arrested in this District and taken before a United States Magistrate Judge who informed me of the charge and of my right to:

(1) retain counsel or request the assignment of counsel if I am unable to retain counsel, (2) an identity hearing to determine if I am the person named in the charge,.

### I HEREBY WAIVE (GIVE UP) MY RIGHT TO A(N):

(X) identity hearing

( ) Identity hearing but request a preliminary probable cause hearing in the prosecuting district and, therefore, consent to the issuance of an order requiring my appearance in the prosecuting district where the charge is pending against me.

x _____
Defendant

_____
Defense Counsel

11/12/2010
Date

_____
ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

Certified to be a true and
correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida
By _____
Deputy Clerk
Date 11/29/2010

Case 9:10-mj-08344-LRJ   Document 5   Entered on FLSD Docket 11/29/2010   Page 1 of 1

## COURT MINUTES
## U.S. MAGISTRATE JUDGE ANN E. VITUNAC DATE:11/12/10 TIME: 10:00 AM

| | | |
|---|---|---|
| DEFT: ROBERT RIVERNIDER (J) | CASE NO: 10-8344-LRJ | |
| AUSA: JOHN McMILLAN, JR. ✓ | ATTY: FPD SAM SMARGON | |
| AGENT: WILLIAM JOHNSON - S/A - FBI | VIOL: REMOVAL TO CONNECTICUT | |
| PROCEEDING: DETENTION AND REMOVAL STATUS! HEARING | RECOMMENDED BOND: PTD (REQUESTED BY GOVT) | |
| BOND/PTD HEARING HELD - yes / no | LANGUAGE: ENGLISH | |
| BOND SET @ | INTERPRETER: | |

FILED by _____ D.C.

NOV 1 2 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA.4 W.P.B.

Disposition: DEFENDANT PRESENT WITH COUNSEL. DEFENDANT WAIVES THE RULE 40 HEARING AND REQUESTS A DETENTION HEARING IN THE DISTRICT OF CONNECTICUT WAIVER SIGNED WARRANT OF REMOVAL SIGNED

☐ All Standard Conditions.

☐ Surrender / or do not obtain passports / travel documents

☐ Rpt to PTS as directed / or _____ x's a week/month by phone; _____ x's a week/month in person

☐ Refrain from excessive use of alcohol

☐ Participate in a mental health assessment and treatment

☐ Random urine testing by Pretrial Services and/or treatment as deemed necessary

☐ Not to encumber property.

☐ Maintain or seek full - time employment/education.

☐ No contact with victims / witnesses.

☐ No firearms.

☐ May Not visit Transportation Establishments.

☐ Travel extended to: _____.

☐ Home Confinement/Electronic Monitoring/Curfew _____, paid by _____.

☐ Other _____

Certified to be a true and correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida
By _____ Deputy Clerk
Date 11/29/2010

| NEXT COURT APPEARANCE: | DATE: | TIME: | JUDGE: | PLACE: |
|---|---|---|---|---|
| REPORT RE COUNSEL: | | | | |
| PTD/BOND HEARING: | | | | |
| PRELIM/ARRAIGN. OR REMOVAL: | | | | |
| STATUS CONFERENCE: | | | | |

DAR: 11:14:08    TIME IN COURT: 11:14 - 11:16AM   CRD

TAPE#AEV-10-65-(2470-2575)   (2 MINS)   K. ZUNIGA

FILED by _____ D.C.

NOV 0 9 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## UNITED STATES DISTRICT COURT
### Southern District of Florida

UNITED STATES OF AMERICA ) Case Number: CR 10 - 8344 LRJ
           Plaintiff )

                     ) REPORT COMMENCING CRIMINAL
      -VS-         )         ACTION

                   )
ROBERT RIVERNIDER   )   96006-004
      Defendant       USMS NUMBER

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TO:  Clerk's Office  MIAMI   FT. LAUDERDALE  (W. PALM BEACH)
      U.S. District Court     FT. PIERCE
                    (circle one of above)

NOTE:  CIRCLE APPROPRIATE LOCATION FOR APPEARANCE IN
      MAGISTRATES COURT ABOVE.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

All items are to be completed. Information not applicable or
unknown will be indicated "N/A".

(1)  Date and Time of Arrest: 11/5/2010   6:50  (am)/pm

(2)  Language Spoken: English

(3)  Offense(s) Charged: 18 USC 1349 Conspiracy
                       18 USC 1343 Wire Fraud

(4)  U.S. Citizen [X] Yes   [ ] No  [ ] Unknown

(5)  Date of Birth: /1965

(6)  Type of Charging Document:  (check one)
    [X] Indictment  [ ] Complaint to be filed/already filed
    Case#_____

    [ ] Bench Warrant for Failure to Appear
    [ ] Probation Violation Warrant
    [ ] Parole Violation Warrant

    Originating District: Connecticut

    COPY OF WARRANT LEFT WITH BOOKING OFFICER [ ] YES [ ] NO

Certified to be a true and
correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida
By _____
Deputy Clerk
11/29/2010

Amount of Bond: $ _____
Who set Bond: _____

(7)  Remarks: _____
         _____

(8)  Date: 11/5/2010    (9) Arresting Officer: SA William E. Johnson

(10) Agency: FBI             (11) Phone: 561-585-1031

(12) Comments: _____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. __10-8344-LRJ__

UNITED STATES OF AMERICA

        Plaintiff,

v.

ROBERT RIVERNIDER,

        Defendant.

FILED by _____ D.C.

NOV - 5 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA.  W.P.B.

**ORDER ON INITIAL APPEARANCE**

AUSA _Nancy Quinlan_
Agent _FBI_

Language __ENGLISH__
Tape No. __LRJ 10-41/2807/DAR 10:05:28/10:13:35__
__2914__

    The above-named defendant having arrested on __11-4-10__ having appeared before the court for an initial appearance on __11-5-10__ and proceedings having been held in accordance with **F.R.C.P. 5 or 40(a)**, it is thereupon

**ORDERED** as follows:

1. _____ appeared as permanent/temporary counsel of record.
   Address:_____
   Zip Code:_____ Telephone: _____
2. AFPD _Robin Rosen-Evans_ appointed as permanent counsel of record.
   Address: __WPB Fl.__
   Zip Code: _____ Telephone: __561-833-6288__
3. The defendant shall attempt to retain counsel and shall appear before the court at 10:00 A.M. on
   __removal__ , 2010.
4. ~~ARRAIGNMENT set~~ for __11-12-10 @10AM BEFORE DUTY MAGISTRATE__

5. The defendant is held in temporary pretrial detention pursuant to 18 U.S.C. Section 3142 (d) or (f) because __DUAT CANDEVED__
   A **Detention hearing** pursuant to 18 U.S.C. Section 3142(f), is set for 10:00 AM on __11-12-10 @ 10AM BEFORE DUTY MAGISTRATE__

6. The defendant shall be release from custody upon the posting of the following type of appearance bond, pursuant to 18 U.S.C. Section 3142:

_____
_____

This bond shall contain the standard conditions of bond printed in the bond form of this Court and, in addition, the defendant must comply with the special conditions checked below:
___a. Surrender all passports and travel document to the Pretrial Services Office.
___b. Report to Pretrial Services as follows:___times a week by phone, ___time a week in person;

other: _____

___c. Submit to random urine testing by Pretrial Services for the use of non-physician-prescribed substances prohibited by law.

___d. Maintain or actively seek full time gainful employment.

___e. Maintain or begin an educational program.

___f. Avoid all contact with victims of or witnesses to the crimes charged.

___g. Refrain from possessing a firearm, destructive device or other dangerous weapon.

___h. Comply with the following curfew: _____

___i. Avoid all commercial transportation facilities; no airports, no marinas, no bus terminals.

___j. Comply with the following additional special conditions of this bond:

_____

_____

This bond was set: At Arrest _____
                   On Warrant _____
                   After Hearing _____

If bond is changed from that set in another District, the reason pursuant to Rule 40(f) is _____

_____

_____

_____

_____ If this space is checked, an evidentiary hearing pursuant to United States v. Nebbia, 357, F.2d 303 (2 Cir. 1966) shall be held prior to the posting of the bond. Such hearing shall be scheduled promptly upon notification to the court that the defendant is ready to post bond.

7. The defendant has been advised by the court that if he or she is released on bond pursuant to the conditions set forthherein or those later ordered by the court, the defendant is subject to arrest and revocation of release and to various civil and criminal sanctions for any violation of those conditions. These various sanctions and penalties are set forth more fully in the Appearance Bond itself.

8. The defendant is committed to the custody of the United States Marshal until an appearance bond has been executed in accordance with this or subsequent court order.

**DONE AND ORDERED** at <u>West Palm Beach, Florida</u>, this <u>5</u> day of <u>NOVEMBER</u>, 2010.

_____
**LINNEA R. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

c: Assistant U.S. Attorney
   Defendant
   Counsel
   U.S. Marshal
   U.S. Probation & Pretrial Service

Certified to be a true and
correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida
By _____
Deputy Clerk
Date 11/29/2010

## CRIMINAL COURT MINUTES

FILED by

**U.S. MAGISTRATE JUDGE** LINNEA R. JOHNSON   **DATE:** 11/05/2010   **TIME:** 9:30 AM

NOV - 5 2010

DEFT:      ROBERT RIVERNIDER ✓   (J)   CASE NO:   10-8344-LRJ   STEVEN M. LARIMORE CLERK U.S. DIST. CT. S.D. OF FLA. W.P.B.

AUSA:      JOHN MCMILLAN Nancy Quintan   ATTY:   AFPD - Robin Rosen-Evans ✓

AGENT:   WILLIAM JOHNSON-FBI   VIOL:   Removal to District of Connecticut

PROCEEDING:   INITIAL HEARING   RECOMMENDED BOND:   PTD (REQUESTED BY GOVT)

BOND/PTD HEARING HELD - yes / no   LANGUAGE:   ENGLISH

BOND SET @:   PRISONER#

❑   All Standard Conditions.

❑   Surrender / or do not obtain passports / travel documents

❑   Rpt to PTS as directed / or _____ x's a week/month by phone; _____ x's a week/month in person

❑   Refrain from excessive use of alcohol

❑   Participate in a mental health assessment and treatment

❑   Random urine testing by Pretrial Services and/or treatment as deemed necessary

❑   Not to encumber property.

❑   Maintain or seek full - time employment/education.

❑   No contact with victims / witnesses.

❑   No firearms.

❑   May Not visit Transportation Establishments.

❑   Travel extended to: _____.

❑   Home Confinement/Electronic Monitoring/Curfew _____, paid by _____.

❑   Other_____

**Disposition** Initial held

Deff. present - advised of rights

Court finds deff. indigent

& appoints FPD.

Deff. stipulate to Identity

Certified to be a true and correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida

By _____
Deputy Clerk

Date 11/29/20

| NEXT COURT APPEARANCE: | DATE: | TIME: | JUDGE: | PLACE: |
|---|---|---|---|---|
| REPORT RE COUNSEL: | | | | |
| PTD/BOND HEARING: | 11-12-10 | 10 AM | Vitunac | WPB |
| PRELIM/ARRAIGN. OR REMOVAL: | 11-12-10 | " | " | " |
| STATUS CONFERENCE | | | | |

TAPE No.   LRJ 10- 41   Begin: 2507/2914   TIME IN COURT: 2 mins

D.A.R.

10:05:28/10:13:38

Certified to be a true and
correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida

By _____
    Deputy Clerk

Date 11/29/2010

10-8344-CRJ

UNITED STATES DISTRICT COURT.

DISTRICT OF CONNECTICUT  -4  P 3:40

Grand Jury N-09-1

UNITED STATES OF AMERICA

v.

ROBERT RIVERNIDER, ROBERT
PONTE, and LORETTA SENECA

CRIMINAL NO. 3:10CR222 (EBB)

VIOLATIONS:

18 U.S.C. § 1349 (Conspiracy)
18 U.S.C. §§ 1343 & 2 (Wire Fraud)
26 U.S.C. § 2701 (Evasion of Payment)
26 U.S.C. § 2701 (Evasion of Assessment)

INDICTMENT

The Grand Jury charges:

FILED by _____ D.C.

NOV - 5 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

BACKGROUND

The Defendants

1.      At all times relevant to this Indictment, defendant ROBERT RIVERNIDER

(hereinafter RIVERNIDER) resided and worked in the West Palm Beach area of Florida.

RIVERNIDER had training as a mortgage broker and in the debt consolidation business.

Beginning in or about 2005, RIVERNIDER worked for a company ("the Company") that,

through Internet-based services and otherwise, provided advice to those seeking to consolidate

and repay debts.

2.      During the times relevant to this Indictment, defendant ROBERT PONTE

(hereinafter PONTE) first resided and worked in Dobbs Ferry, New York, then in New Fairfield,

Connecticut, and then Stonington, Connecticut.  In or about 2005, RIVERNIDER met PONTE

and recruited him to work in the New England region for the Company.  RIVERNIDER and

PONTE, in part while still working for the Company, undertook the conspiracies and schemes

identified below in this Indictment.

3.       At all times relevant to this Indictment, defendant LORETTA SENECA (hereinafter SENECA), a mortgage broker and the older sister of RIVERNIDER, worked with RIVERNIDER, PONTE and others to gather information and process most of the real estate transactions that form the basis for the conspiracy and scheme to defraud alleged in Counts Nine through Eighteen.   During all times relevant to this Indictment, SENECA resided in the West Palm Beach and Boca Raton areas of Florida, and, as part of the conspiracy and scheme to defraud alleged in Counts Nine through Eighteen, purchased one or more properties in Florida and/or Tennessee, signing a loan application and HUD statement that misrepresented, among other things, the true purchase price of the property, her monthly income, the occupancy status of the property, and the earnest money payments.

### Entities/Alter Egos Associated with RIVERNIDER and PONTE

4.       In or about June 2006, RIVERNIDER established Cut Above Ventures LLC ("Cut Above Ventures"), a New Mexico limited liability company with its principal place of business in Florida.   RIVERNIDER solely owned this company and was its president.   Cut Above Ventures held at least three checking accounts at Bank of America, the statements of which were sent to RIVERNIDER at the West Palm Beach residence of his younger sister.   RIVERNIDER had sole signing authority for the accounts.   PONTE and RIVERNIDER funneled through these accounts most of the investor monies that are the subject of the conspiracies and schemes set forth in this Indictment.

5.       Beginning in or about 2005, PONTE started doing business in the name of The Hudson Group.   He established a website in this name to market a debt reduction program called

"No More Bills."

6.      In or about October 2006, PONTE established Falling Rock LLC ("Falling

Rock"), a New Mexico limited liability company with its principal place of business in

Connecticut. The company had no employees and no physical office location, and did not file

tax returns or pay taxes.  In or about October 2006, PONTE opened a non-interest bearing

checking account for Falling Rock at Bank of America.  PONTE received monthly bank

statements for the account at his Connecticut address.   PONTE used this account to receive

payments from the Company and Cut Above Ventures, and the account was instrumental to

PONTE engaging in tax evasion as outlined below in Counts Nineteen and Twenty.

### The Victim Investors and Victim Borrowers

7.      As described in greater detail below in Counts One through Eight, RIVERNIDER

and PONTE conspired to defraud and engaged in a scheme to defraud investors, hereinafter

referred to as "Victim Investors," into giving money to PONTE and RIVERNIDER for purported

debt reduction plans.

8.      As described in greater detail below in Counts Nine through Eighteen,

RIVERNIDER, PONTE, SENECA and others conspired to defraud and engaged in a scheme to

defraud a number of individuals into purchasing real estate investment properties based on

material misrepresentations, concealed facts, and material omissions. Those individuals,

hereinafter referred to as the "Victim Borrowers," included a large number of the Victim

Investors.

- 3 -

### The Victim Lenders

9.      As described in greater detail below in Counts Nine through Eighteen, RIVERNIDER, PONTE, SENECA and others conspired to defraud and engaged in a scheme to defraud various mortgage lenders, collectively referred to as the "Victim Lenders," into loaning monies to the Victim Borrowers based on a series of materially false and fraudulent representations. Those Victim Lenders included, among others: 1) SunTrust Mortgage Inc. with offices in Richmond, Virginia, among other locations, and 2) Wells Fargo Bank, NA, with offices in Miami and Stuart, Florida, among other locations.

10.     At all times relevant to this Indictment, Wells Fargo Bank, NA, was a financial institution with deposits insured by the Federal Deposit Insurance Corporation (FDIC).

### COUNT ONE – CONSPIRACY
### 18 U.S.C. § 1349

### The Conspiracy to Defraud Victim Investors

11.     The allegations contained in Paragraphs 1, 2, 4-7 of this Indictment are realleged and incorporated as though fully set forth herein.

12.     Beginning in or about June 2005 and continuing to in or about April 2008, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, defendants RIVERNIDER and PONTE did unlawfully, knowingly and intentionally conspire, combine, confederate and agree with each other and others known and unknown to the Grand Jury to commit offenses against the United States, namely, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing and

- 4 -

attempting to execute the scheme and artifice did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

13.     The purpose of the conspiracy was for RIVERNIDER and PONTE to enrich themselves by defrauding the Victim Investors of monies based on misrepresentations that the monies would be invested in legitimate, high-return investments.

## Manner and Means of the Conspiracy

14.     The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, those set forth in ¶¶ 15-20.

15.     It was part of the conspiracy that beginning in 2005, RIVERNIDER and PONTE used the Internet and other means to market a debt payment program typically called "No More Bills" through The Hudson Group. With the "No More Bills" program, RIVERNIDER and PONTE sought Victim Investors to invest monies with them, monies which typically the Victim Investors would raise through home equity lines of credit or monies borrowed from 401K plans.

16.     It was part of the conspiracy that RIVERNIDER and PONTE materially misrepresented and caused to be misrepresented, among other things:

a.      That the Victim Investors would receive a substantial investment return, typically a monthly repayment on the invested monies of approximately seven to ten percent of their initial investment.

b.      That the returns would continue for a period substantially longer than needed to recoup the initial investment and result in a return substantially greater than the initial investment.

- 5 -

    c.    That the Victim Investors' existing debts and home equity lines of credit, if taken out to fund the investment, would be repaid in full from investment returns.

    d.    That the Victim Investors' monies were being invested offshore in legitimate high- return investments, including investments in foreign currency exchanges, hedge funds, or other high-yield ventures.

17.    It was part of the conspiracy that PONTE would often explain that he was working with a business partner, RIVERNIDER, who had specialized knowledge in investments. PONTE frequently explained that he and RIVERNIDER were pooling investor funds to allow them to invest like the large investors in the market.

18.    It was part of the conspiracy that, in truth and in fact, as RIVERNIDER and PONTE well knew, the representations made to the Victim Investors were materially false and misleading. RIVERNIDER and PONTE knew that the invested monies could not and would not earn the returns advertised, that the returns would not pay out significantly more than the investment, that the monies invested by the later Victim Investors would not be repaid in full, and that the invested monies were not being invested as represented, including not being invested in foreign currency exchanges and hedge funds. Instead, the monies were used to pay, among other things, the preexisting debts of other investors and the living expenses of the extended family of RIVERNIDER and PONTE.

19.    It was part of the conspiracy that PONTE, from his home/office in Connecticut, would routinely talk and correspond by email with the Victim Investors, his assistant in New York and his coconspirator RIVERNIDER in Florida. Upon receipt of information in Connecticut from the Victim Investors, PONTE would forward the relevant applications and other financial information to RIVERNIDER in Florida. RIVERNIDER would review and

- 6 -

approve the purported investment plans, including the advertised returns.

20. It was part of the conspiracy that, if the Victim Investors remained interested in investing in the purported investment plan, RIVERNIDER and PONTE would instruct them or cause for them to be instructed to wire monies for investment to one of the bank accounts held in the name of Cut Above Ventures. RIVERNIDER would then direct the use of the monies either through wiring instructions or by writing checks on the account.

## Overt Acts

21. In furtherance of the conspiracy, and to accomplish its purposes and objects, the defendants RIVERNIDER, PONTE and others known and unknown to the Grand Jury committed and caused others to commit at least one of the following overt acts, among others, in the District of Connecticut and elsewhere:

a. On or about September 13, 2006, RIVERNIDER emailed PONTE with the terms of the investment plan for the Victim Investor Michael M. for an investment amount of $250,000.

b. On or about May 14, 2007, PONTE emailed RIVERNIDER asking whether RIVERNIDER had a chance to finish the purported investment plan for the Victim Investor Richard B.

c. Between July and August 2007, PONTE talked by telephone with the Victim Investor Maria M. on multiple occasions convincing her to invest with PONTE and RIVERNIDER.

d. On or about July 20, 2007, PONTE talked by telephone with the Victim Investor Robben W. about the investment plan.

e. On or about Labor Day Weekend, 2007, PONTE met with the Victim Investor Joel B. to discuss investing with PONTE and RIVERNIDER.

f. In or about April 2007, PONTE talked by telephone with the Victim Investor Scott M. about the investment plan.

g.      On or about September 5, 2007, responding to an email from PONTE regarding the interest of the Victim Investor Louis C. in investing with PONTE and RIVERNIDER, RIVERNIDER emailed instructions to sell the plan to the investor and have Louis C. send in money.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS TWO through EIGHT – Wire Fraud
### 18 U.S.C. §§ 1343 & 2

#### The Scheme to Defraud the Victim Investors

22.     The allegations contained in Paragraphs 1, 2, 4-7, and 15-20 of this Indictment are realleged and incorporated as though fully set forth herein.

23.     From in or about June 2005 through in or about April 2008, in the District of Connecticut and elsewhere, defendants RIVERNIDER and PONTE knowingly, willfully and with intent to defraud devised and intended to devise a scheme and artifice to defraud the Victim Investors and to obtain money and property from these investors by means of materially false and fraudulent pretenses, representations and promises, which scheme and artifice is in substance set forth in ¶¶ 15-20 above.

24.     As a result of the scheme, PONTE and RIVERNIDER exposed the Victim Investors to a risk of loss, and the Victim Investors suffered significant losses.

#### The Execution of the Scheme and Artifice to Defraud

25.     On or about the dates listed below, in the District of Connecticut and elsewhere, having devised and intended to devise a scheme and artifice to defraud the Victim Investors, and for obtaining money and property from the Victim Investors by means of materially false and fraudulent pretenses, representations and promises as set forth in ¶¶ 15-20 above, for the purpose of executing such aforementioned scheme and artifice, RIVERNIDER and PONTE transmitted

- 8 -

and caused to be transmitted by means of a wire and radio communication in interstate

commerce, the following writings, signs, signals, pictures and sounds, with each wiring

constituting a separate count of this Indictment as enumerated below:

| Count | Wiring Date (on or about) | Origin of Wiring | Destination of Wiring | Description | Victim Investor |
|---|---|---|---|---|---|
| 2 | 11/27/2006 | CT | NJ | Email between PONTE and Victim Investor Michael M. with wiring instructions | Michael M. |
| 3 | 6/1/2007 | CT | CA | Phone call between PONTE and Victim Investor Richard B. | Richard B. |
| 4 | 8/2/07 | NY | CT, FL | Email among PONTE's assistant, PONTE and RIVERNIDER regarding Victim Investor Maria M.'s potential investment | Maria M. |
| 5 | 9/8/07 | CT | CA, NY | Email from PONTE to PONTE's assistant and Victim Investor Robben W. with wiring instructions for potential investment | Robben W. |
| 6 | 9/07/2007 | CT | AZ | Phone call between PONTE and Victim Investor Joel B., following email communications between them | Joel B. |
| 7 | 9/12/2007 | CT | NM | Wire transfer of funds from Victim Investor Scott M. to Cut Above Ventures | Scott M. |
| 8 | 9/14/2007 | CT | NM | Wire transfer of funds from Victim Investor Louis C. to Cut Above Ventures | Louis C. |

All in violation of Title 18, United States Code, Sections 1343 & 2.

## COUNT NINE - CONSPIRACY
### 18 U.S.C. § 1349

26. The allegations contained in Paragraphs 1-10 of this Indictment are realleged and incorporated as though fully set forth herein.

### The Conspiracy to Defraud the Victim Lenders and Victim Borrowers

27. Beginning in November 2006 and continuing to in or about December 2007, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, defendants RIVERNIDER, PONTE, and SENECA did unlawfully, knowingly and intentionally conspire, combine, confederate and agree with each other and others, known and unknown to the Grand Jury, to commit offenses against the United States, namely, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property from the Victim Lenders, including affecting a financial institution, and the Victim Borrowers by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing and attempting to execute the scheme and artifice, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

28. The purpose of the conspiracy was for RIVERNIDER, PONTE, SENECA and others known and unknown to the Grand Jury to enrich themselves by defrauding the Victim Lenders to extend loans to finance the purchase of properties based on misinformation and by defrauding the Victim Borrowers into seeking such lending.

- 10 -

## Manner and Means of the Conspiracy

29.    The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, those set forth in ¶¶ 30-35.

30.    It was part of the conspiracy that RIVERNIDER, PONTE, and others would and did recruit the Victim Borrowers to take out financing to purchase various investment properties, primarily in Tennessee and Florida, with financing from the Victim Lenders. RIVERNIDER and PONTE typically represented to the Victim Borrowers that these properties would be passive investments and that PONTE and RIVERNIDER would be responsible for the details of the purchase, rental, maintenance and payment of the mortgages on the properties.

31.    It was part of the conspiracy that RIVERNIDER, PONTE, and others made material misrepresentations and material omissions and concealed material facts from the Victim Borrowers, including representing that RIVERNIDER and PONTE would arrange for the purchase of the properties by the Victim Borrowers at markedly discounted values.  In fact, RIVERNIDER and PONTE frequently marked up the purchase price of the properties to the Victim Borrowers often by as much as twenty-five percent without disclosing the increase in the purchase price.

32.    It was also part of the conspiracy that RIVERNIDER, PONTE and others represented that the investment properties would return to the Victim Borrowers sufficient monies to cover the carrying costs as well as reduce the Victim Borrowers' other debt burden, when RIVERNIDER, PONTE, and others knew that the returns would not produce such returns.

33. It was part of the conspiracy that RIVERNIDER, PONTE, and others falsified certain of the Victim Borrowers' material financial information in order to obtain financing from the Victim Lenders to purchase the properties and either did not inform the Victim Borrowers of the misrepresentations or provided explanations for the figures that were inconsistent with what the lenders would allow.

34. It was part of the conspiracy that RIVERNIDER, PONTE, SENECA and others caused to be represented in loan applications and other documents provided to the Victim Lenders a number of material misrepresentations, including, among others: (1) the true arms-length purchase price of the property (which was routinely markedly overstated); (2) the income earned by the respective Victim Borrower (which was routinely markedly overstated); (3) the assets of the Victim Borrower (which were often overstated); (4) the liabilities of the Victim Borrower (which were often understated); (5) the true earnest payments coming from the Victim Borrower (which were routinely fronted by RIVERNIDER, PONTE and SENECA); and (6) the true intended occupancy status of the properties (which, for example, were often represented to be second homes, when the intent was for them to be rental properties).

35. It was part of the conspiracy that SENECA, a trained mortgage broker, was actively involved in the real estate transactions put together with RIVERNIDER and PONTE, including organizing and gathering many of the materials needed by the Victim Lenders, gathering certain information from the Victim Borrowers, providing certain comparables based on properties brokered by RIVERNIDER to be used for purportedly independent appraisals, and a range of other background tasks necessary for the relevant loans to close.

- 12 -

### Overt Acts

36.   In furtherance of the conspiracy, and to accomplish its purposes and objects,

RIVERNIDER, PONTE, SENECA and others, known and unknown to the Grand Jury,

committed and caused others to commit at least one of the following overt acts, among others, in

the District of Connecticut and elsewhere:

    a.   On or about May 8, 2007, PONTE signed as a witness on closing documents involving the property purchased by the Victim Borrower Donna M.

    b.   On or about March 8, 2007, PONTE emailed the Victim Borrower Robert B., forwarding an email from RIVERNIDER regarding the contract for a Tennessee property.

    c.   On or about March 8, 2007, PONTE emailed to the wife of the Victim Borrower Curtis W., forwarding a contract for a Tennessee property.

    d.   On or about March 23, 2007, PONTE discussed by telephone with the Victim Borrower Robert C. investing in cabins or condos.

    e.   On or about May 16, 2007, RIVERNIDER emailed PONTE about a real estate deal for the Victim Borrower Lisa G.

    f.   On or about May 24, 2007, PONTE emailed the Victim Borrower Alfred V. real estate investment options.

    g.   On or about July 2, 2007, PONTE emailed RIVERNIDER with information on settlement for the Victim Borrower Bruce P.

    h.   On or about July 13, 2007, PONTE's assistant emailed PONTE the signed contract from the Victim Borrower Michael Mc. and also forwarded the contract by email to RIVERNIDER.

    i.   On or about November 2, 2007, PONTE emailed the Victim Borrower Joel B., seeking him to fax asset information to a mortgage consultant for a real estate purchase.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TEN through EIGHTEEN - Wire Fraud
## 18 U.S.C. §§ 1343 & 2

### Scheme to Defraud the Victim Lenders and the Victim Borrowers

37.     The allegations contained in Paragraphs 1-10, and 30-35 of this Indictment are realleged and incorporated as though fully set forth herein.

38.     From in or about November 2006 through in or about December 2007, in the District of Connecticut and elsewhere, defendants RIVERNIDER, PONTE, SENECA and others known and unknown to the Grand Jury knowingly, willfully and with intent to defraud devised and intended to devise a scheme and artifice to defraud the Victim Lenders, including affecting a financial institution, and the Victim Borrowers to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, which scheme and artifice is in substance set forth in ¶¶ 30-35.

39.     The Victim Lenders extended a number of loans to the Victim Borrowers to purchase properties primarily in Tennessee and Florida.  As a result of the scheme, the Victim Lenders and the Victim Borrowers were subjected to a risk of loss and suffered significant losses.

### The Execution of the Scheme and Artifice to Defraud

40.     On or about the dates listed below, in the District of Connecticut and elsewhere, having devised and intended to devise a scheme and artifice to defraud the Victim Borrowers and the Victim Lenders, and for obtaining money and property from the Victim Borrowers and the Victim Lenders by means of materially false and fraudulent pretenses, representations and promises as set forth in ¶¶ 30-35, for the purpose of executing such aforementioned scheme and artifice, RIVERNIDER, PONTE and SENECA transmitted and caused to be transmitted by

- 14 -

means of a wire and radio communication in interstate commerce, the following writings, signs,

signals, pictures and sounds, with each wiring constituting a separate Count of this Indict...ent as

enumerated below:

| Count | Date of Wiring (on or about) | Origin of Wiring | Destination of Wiring | Description | Victim Lender (approx. closing date) | Victim Borrower |
|---|---|---|---|---|---|---|
| 10 | 3/19/2007 | FL | CT | Email from RIVERNIDER to PONTE regarding information for the loan for Victim Borrower Donna M. | Suntrust (5/8/07) | Donna M. |
| 11 | 3/08/2007 | CT | MI | Email from PONTE to Victim Borrower Robert B. forwarding email from RIVERNIDER for contract for Tennessee property | Suntrust (6/21/07) | Robert B. |
| 12 | 3/8/07 | CT | NY | Email from PONTE forwarding Victim Borrower Curtis W.'s wife a contract for a Tennessee property, to which she responds by email the same day | Suntrust (6/5/07) | Curtis W. |
| 13 | 3/23/07 | AZ | CT | Email from Victim Borrower Robert C. to PONTE regarding cabin/condos, following up a phone conversation | Suntrust (6/7/07) | Robert C. |

| Count | Date of Wiring (on or about) | Origin of Wiring | Destination of Wiring | Description | Victim Lender (approx. closing date) | Victim Borrower |
|-------|------------------------------|------------------|-----------------------|-------------|--------------------------------------|-----------------|
| 14 | 5/16/2007 | FL | CT | Email from RIVERNIDER to PONTE regarding a real estate deal with Victim Borrower Lisa G. | Wells Fargo (6/29/07) | Lisa G. |
| 15 | 5/24/2007 | CT | CO | Email from PONTE to Victim Borrower Alfred V. with investment options regarding condos | Wells Fargo (8/6/07) | Alfred V. |
| 16 | 7/2/2007 | CA | CT | Email from Victim Borrower Bruce P. to PONTE | Wells Fargo (6/29/07) | Bruce P. |
| 17 | 7/13/07 | NY | CT, FL | Email from PONTE's assistant to PONTE with the signed contract from Victim Borrower Mike Mc.; email also sent to RIVERNIDER | Wells Fargo (8/7/07) | Mike Mc. |
| 18 | 11/02/2007 | CT | AZ | Email from PONTE to Victim Borrower Joel B. seeking asset information for real estate deal | Wells Fargo (11/30/07) | Joel B. |

All in violation of Title 18, United States Code, Sections 1343 & 2.

## COUNT NINETEEN -- Tax Evasion (of Payment)
### 26 U.S.C. § 7201

### Background

41. The allegations contained in Paragraphs 1-10, 15-20, 30-35 of this Indictment are realleged and incorporated as though fully set forth herein.

42. During the 2001 calendar year, defendant PONTE earned taxable income by: the liquidation of two individual retirement accounts in his name held by the Vanguard Group, totaling $128,241; form W-2 wage income from his employment by Cognet Corp., totaling $57,635; and a form 1099-R pension distribution, totaling $13,935, relating to his withdrawal from the savings plan established by his former employer, Siemens Corporation.

43. In the Spring of 2002, PONTE contacted a Certified Public Accountant he had used previously to prepare his federal personal income tax return for 2001. The accountant informed PONTE that he owed approximately $62,980 in taxes for the 2001 tax year. Despite credit for prior withholdings made by Cognet Corp. and a partial payment made by PONTE to seek an extension for the filing of the return until or about August 2002, PONTE remained with a significant outstanding tax liability. Thereafter the Internal Revenue Service (IRS) sent notices to PONTE of his continuing tax obligation, including that, in December 2003, the IRS notified him that the deficiency had grown to approximately $76,632, including penalties and interest. PONTE periodically continued to receive notices of deficiency relating to his 2001 deficiency, including notices in 2004, 2008, and 2009.

## Evasion of Payment

44.     In or about November 2003 until in or about February 2010, in the District of Connecticut and elsewhere, PONTE did willfully attempt to evade and defeat the payment of a large part of the income tax, penalties and interest due and owing by him to the United States of America for the calendar year 2001, which by February 2010 totaled approximately $99,086, by one or more affirmative acts of evasion, including the following acts while living and working in Connecticut:

        a.      having in October 2006 opened a non-interest bearing checking account in the name of Falling Rock LLC, rather than in his own name, PONTE caused to be deposited income earned from the illegal ventures identified above in Counts One through Eighteen, including $5000 on July 9, 2007; $18,700 on August 17, 2007; $49,750 on Sept. 26, 2007; and $5000 on Nov. 7, 2007;

        b.      between March 2007 and July 2008, PONTE caused to be made from the Falling Rock LLC account one or more payments for leasing or maintaining a Mercedes stationwagon that was used primarily by him, but leased in the name of a former girlfriend, those payments made on or about the following dates March 9, April 17, June 8, June 26, July 5, August 8, August 30, October 4, November 20, November 30, December 21, December 28, 2007, and February 29, March 28, May 2, May 27, May 30, June 2, June 30, July 2, 2008, all totaling approximately $15,031;

- 18 -

c.    between January 2007 and February 2009, PONTE caused to be made one

or more payments toward a residence where he resided alone or with a

girlfriend that was owned in the name of another person, including

payments made on or about:

   i.    April 23, Sept. 17, October 1, October 10, and October 15, 2007,
         and March 25, May 28, June 2, and June 6, 2008, and February 9,
         2009 for property tax, sewage or water usage, totaling  $5,288;

   ii.   January 4, May 2, June 4, and December 20, 2007 and January 7,
         February 20, 2008 for heating oil, totaling $5670;

   iii.  June 14, July 9, July 12, August 13, October 10, October 16,
         October 22, November 6, and December 3, 2007 and March 18,
         June 3, 2008 for landscaping expenses, totaling $12,561;

   iv.   September 5, 2007 for partial construction expenses for a pool,
         totaling  $7,600;

   v.    September 24, 2007 and January 8, 2008 for a privacy fence,
         totaling $3,040.

All in violation of Title 26, United States Code, Section 7201.


### COUNT TWENTY – Tax Evasion (of Assessment)
### 26 U.S.C. § 7201

45.    The allegations contained in Paragraphs 1-10, 15-20, 30-35, 44(a)-(c) of this

Indictment are realleged as though fully set forth herein.

46.    During the calendar year 2007, defendant PONTE, a resident of Stonington,

Connecticut, had received taxable income in the sum of approximately $242,364, which reflected

monies obtained from Cut Above Ventures, commissions from No More Bills and two invoices

for computer services rendered the Company. Upon that taxable income, there was owing to the

United States of America an income tax of approximately $58,701. Well knowing and believing

the foregoing facts, PONTE, on or about April 15, 2008, in the District of Connecticut, did willfully attempt to evade and defeat the income tax due and owing by him to the United States of America for the calendar year by failing to make an income tax return on or before April 15, 2008, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay to the Internal Revenue Service the income tax, and by one or more of the affirmative acts of evasion taken during the 2007 tax year and continuing on or after April 15, 2008, as identified above at ¶ 44(a)-(c).

All in violation of Title 26, United States Code, Section 7201.

A TRUE BILL

FOREPERSON

DAVID B. FEIN
UNITED STATES ATTORNEY

JOHN H. DURHAM
COUNSEL TO THE UNITED STATES ATTORNEY

CHRISTOPHER W. SCHMEISSER
ASSISTANT UNITED STATES ATTORNEY

- 20 -